UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **BJZJ, LLC** | **CASE NO. 6:21-CV-00998** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **MT. HAWLEY INSURANCE CO.** | **MAGISTRATE JUDGE HANNA** |

<u>RULING</u>

Before the Court is a Motion to Dismiss for Failure to State a Claim brought by Defendant, Mt. Hawley Insurance Company.[1] Pursuant to its motion, Defendant seeks dismissal of all claims asserted in this matter. Plaintiff BJZJ LLC d/b/a Snap Fitness opposes the motion.[2] For the reasons that follow, the motion is GRANTED.

**I.**
**BACKGROUND**

Plaintiff owns and operates a fitness and recreational facility located in Maurice, Louisiana.[3] Plaintiff purchased a Commercial Lines Policy ("the Policy") from Defendant, which was in effect at all times relevant to this suit. The Policy includes Business Income and Extra Expense coverage. Beginning in March of 2020, in response to the onset of the COVID-19 pandemic, the Governor of Louisiana issued a series of orders requiring nonessential businesses to either suspend or reduce their operations. Due to these orders, Plaintiff alleges it was "forced to greatly reduce operations," which in turn caused "immense financial losses."[4] To recover its lost

---

[1] ECF No. 11.
[2] ECF Nos. 15, *see also id.* at 16 (Defendant's reply).
[3] The factual information set forth above is taken from Plaintiff's "Petition for Declaratory Judgment," originally filed in state court. *See* ECF No. 1-2 at 3-19. For present purposes "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.2d 191, 205 (5th Cir. 2007).
[4] ECF No. 1-2 at ¶ 5; *see also id.* at ¶¶ 17, 36-39, 41.

revenue, Plaintiff filed a claim with Defendant for coverage under the Policy. On or about December 28, 2020, Defendant denied coverage. Plaintiff then filed this suit, contending coverage is triggered by the "Business Income and Extra Expense" portion of the Policy, including under the "Civil Authority" provision.[5] Plaintiff seeks declaratory and injunctive relief, compensatory damages for breach of contract, costs and attorney's fees.

## II.
### STANDARD OF REVIEW

"Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable clam."[6] Such a motion "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."[7] To overcome a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.[8] The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] Although a complaint does not need detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[10] A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements" will not suffice.[11] Likewise, a complaint that tenders "naked assertions devoid of further factual enhancement" will not survive a Rule 12(b)(6) motion.[12]

---

[5] *Id.* at ¶¶ 53, 67, 80.
[6] *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).
[7] *Id.* at 161–62.
[8] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011).
[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level," and not merely create "a suspicion [of] a legally cognizable right of action.") (quoting 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-36 (3d ed. 2004)).
[10] *Iqbal* at 678 (citing *Twombly* at 555).
[11] *Twombly* at 555.
[12] *Iqbal* at 678 (internal quotation marks, alterations omitted) (quoting *Twombly* at 557).

When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[13] However, this tenet does not apply to conclusory allegations, unwarranted deductions, or legal conclusions couched as factual allegations, as such assertions do not constitute "well-pleaded facts."[14] In considering a Rule 12(b)(6) motion, the district court generally "must limit itself to the contents of the pleadings, including attachments thereto."[15] One exception to this rule is that the court may consider "documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."[16] In light of this exception, the Court will consider the insurance policy at issue in this case, as it is attached to Defendant's motion and quoted from at length in the Complaint.

## III.
## LAW AND ANALYSIS

### A.    Applicable Law

This suit was removed to this Court on the basis of diversity jurisdiction.[17] Accordingly, the Court applies Louisiana's Conflict of Laws codal articles to determine what body of law applies when interpreting the contract of insurance.[18] Under those articles, the law of the state where the insurance contract was issued and executed generally governs the interpretation of the contract.[19] However, a choice-of-law analysis is unnecessary "if the laws of the states with an interest in the

---

[13] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (internal quotation marks omitted); *see also Iqbal* at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.")
[14] *Twombly* at 555; *Iqbal* at 678.
[15] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[16] *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).
[17] 28 U.S.C. § 1332.
[18] *See Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003); *see also* LOUISIANA CIVIL CODE, Book IV.
[19] *See* LA. CIV. CODE art. 3537; *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014).

dispute do not conflict."[20] Here, Defendant states the Policy was issued in Minnesota, but that "for the purposes of the instant motion, there is no conflict between Minnesota and Louisiana law. . . ."[21] Both parties have applied Louisiana law in their briefing when interpreting the insurance contract. Accordingly, the Court presumes there is no material conflict between the laws of Louisiana and Minnesota and will therefore interpret the contract in accordance with Louisiana law. To determine Louisiana law, district courts are "bound to apply the law as interpreted by the state's highest court."[22] Where such decisions are absent, the court must make an "*Erie*-guess" and "determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case."[23] However, if a panel of the Fifth Circuit has ruled on a state law issue and that ruling has not been superseded by either Louisiana jurisprudence or a change in statutory authority, district courts are bound by that interpretation of Louisiana law.[24]

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[25] "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract."[26] "The parties' intent, as reflected by the words of the policy, determine[s] the extent of coverage."[27] The words of an insurance contract are not to be read in isolation, as "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or

---

[20] *Aggreko, L.L.C. v. Chartis Specialty Insurance Company*, 942 F.3d 682, 687 (5th Cir. 2019).
[21] ECF No. 11-1 at 16; *see also id.* at n.7 (reserving its "right to advocate for the application of Minnesota law, should any conflict arise").
[22] *Barfield v. Madison Cty.*, 212 F.3d 269, 271-72 (5th Cir. 2000).
[23] *Am. Int'l Specialty Lines*, 352 F.3d at 260; *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938).
[24] *Lozovyy v. Kurtz*, 813 F.3d 576, 580 (5th Cir. 2015).
[25] *Cadwallader v. Allstate Ins. Co.*, 848 So .2d 577, 580 (La. 2003).
[26] *Id.*; *see also* LA. CIV. CODE art. 2045.
[27] *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 2007).

application attached to or made a part of the policy."[28] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[29]

A provision of a contract that is susceptible to different meanings "must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."[30] "Ambiguous policy provisions are generally construed against the insurer and in favor of coverage."[31] Under this rule, an equivocal provision seeking to narrow an insurer's obligation is strictly construed against the insurer.[32] This principle however applies "only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations."[33] As explained by the Louisiana Supreme Court:

> The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.
>
> It is equally well settled, however, that subject to the . . . rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.[34]

---

[28] La. R.S. § 22:881.
[29] LA. CIV. CODE art. 2046; *see also id.* at 2047 (a contract's words are to be given their generally prevailing meaning; words of art and technical terms are given their technical meaning if the contract involves a technical matter); *id.* at 2048 (words susceptible of different meanings are interpreted as having the meaning that best conforms to the object of the contract).
[30] LA. CIV. CODE art. 2049.
[31] *Cadwallader* at 580 (citing LA. CIV. CODE art. 2056).
[32] *Id.*
[33] *Id.*
[34] *Elliott v. Continental Cas. Co.*, 949 So.2d 1247, 1254 (La. 2007) (quoting *Reynolds*, 634 So.2d at 1182–83) (emphasis omitted).

The insured bears the burden of proving an incident falls within the policy's terms; the insurer bears the burden of proving the applicability of an exclusionary clause within the policy.[35]

**B.        Analysis**

Plaintiff asserts it is entitled to coverage under the Policy's "Business Income and Extra Expense" and "Civil Authority" provisions. Defendant contends that the forgoing provisions do not provide coverage for losses associated with the COVID-19 pandemic and further asserts that coverage is barred by several exclusions in the Policy. The basic grant of coverage set forth in the Policy provides coverage "for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss."[36] "Covered Cause of Loss" is defined as "Risks of Direct Physical Loss" unless excluded or limited by the Policy.[37] The "Business Income and Extra Expense" portion of the Policy states:

> We will pay for the actual loss of "earnings" you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the location(s) scheduled in this policy, . . . caused by or resulting from a Covered Cause of Loss.[38]

In addition to "earnings," this portion of the policy provides coverage for any "Extra Expense" incurred,[39] as well as for any earnings lost when access to the facility is prohibited by "action of

---

[35] *Doerr v. Mobil Oil Corp.*, 2000-0947, p. 5 (La. 12/19/00); 774 So.2d 119, 124, *opinion corrected on reh'g*, 2000-0947 (La. 3/16/01); 782 So.2d 573; *see also Martco Ltd. v. Wellons, Inc.*, 588 F.3d 864, 880 (5th Cir. 2009).
[36] ECF No. 11-3 at 19.
[37] *Id.* at 38.
[38] *Id.* at 33.
[39] "Extra Expense" is defined as "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused or resulting from a Covered Cause of Loss." *Id.*

civil authority,"[40] provided the extra expenses or loss of earnings was caused by a "direct physical loss of or damage to property."[41]

Defendant asserts Plaintiff's claim for Business Income and Extra Expense coverage fails as a matter of law, because Plaintiff has not alleged "direct physical loss or damage to property" as required by the Policy.[42] Plaintiff responds that it is not required to allege "physical damage," because allegations of "physical loss" are sufficient to state a claim under the Policy.[43] According to Plaintiff, an insured can suffer a "physical loss," without necessarily suffering "physical damage," thereby triggering coverage under the policy.[44] Stated differently, Plaintiff contends that allegations of loss of use are sufficient to trigger Business Income and Extra Expense coverage, as such events, according to Plaintiff, constitute "direct physical loss of property."

The policy language at issue in this case has not been interpreted by the Louisiana Supreme Court.[45] However, the United States Court of Appeals for the Fifth Circuit recently interpreted the phrase in *Q Clothier New Orleans, LLC v. Twin City Fire Ins. Co.*[46] As that ruling has not been superseded by Louisiana jurisprudence nor by a change in statutory authority, the Court is bound by that interpretation. In *Q Clothier*, the Fifth Circuit made an *Erie* guess as to how the Louisiana Supreme Court would interpret the same policy language—"direct physical loss of or damage to

---

[40] The "Civil Authority" provision states, "We will pay for the loss of 'earnings' you sustain and your reasonable; [sic] necessary 'extra expense' caused by action of civil authority that prohibits access to the scheduled location(s) due to direct physical loss of or damage to property, other than at the scheduled location(s), caused by or resulting from a Covered Cause of Loss." *Id.*
[41] *Id.* at (A)(3)(b); *see also id.* at (A)(3)(a).
[42] ECF No. 11-1 at 17.
[43] ECF No. 15 at 10.
[44] Plaintiff provides the following example of such an occurrence: "a person can suffer the physical loss of property through theft, without any actual physical damage to the property." *Id.* (citing *Mangerchine v. Reaves*, 2010-1052, p. 11 (La.App. 1 Cir. 3/25/11); 63 So.3d 1049, 1056.
[45] *Q Clothier New Orleans, LLC v. Twin City Fire Ins. Co.*, 21-30278, 2022 WL 841355, *3 (5th Cir. March 22, 2022).
[46] *Id.* at *4-6.

property."[47] The Fifth Circuit concluded that the Louisiana Supreme Court would interpret the phrase "to cover only tangible alterations of, injuries to, and deprivations of property."[48] In that case, because closure of the insured's storefront due to governmental pandemic orders caused only a loss of business income—and did not cause a tangible alteration, injury, or deprivation of covered property—the Court held the insured failed to allege facts triggering coverage under the policy."[49] Plaintiff in this matter has identified nothing in the Policy that would justify departing from *Q Clothier*. The plain text of the Policy extends coverage only when there is a "physical loss of . . . property"—*i.e.*, a tangible alteration of, injury to, or deprivation of property.[50] Here, there was no tangible alteration of, injury to, or deprivation of Plaintiff's insured property; rather, Plaintiff's preferred use of its facility was restricted.[51] Such allegations are insufficient to state a claim under the general coverage provision of the Business Income and Extra Expense portion of the Policy.

Nor does the Civil Authority provision provide coverage under these facts. That provision states:

---

[47] *Id.* at *3 (finding the policy language "does not cover business income losses caused by civil authority orders closing nonessential businesses in response to the COVID-19 pandemic.")
[48] *Id.* at *4.
[49] *Id. see also id.* at *5 ("Although we recognize the government orders placed limitations on the operations of businesses, those limitations did not tangibly alter [the insured's] property or deprive [the insured] of its property."); *see also Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (Noting that even if the insured alleged that the COVID-19 virus "was present *and* physically attached itself" to the insured's property, the insured would still fail to state a claim, as the virus's "impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days.")
[50] *Q Clothier* at *4.
[51] *See e.g. id.* at *5 ("Although we recognize the government orders placed limitations on the operations of businesses, those limitations did not tangibly alter [the insured's] property or deprive [the insured] of its property."); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (Noting that even if the insured alleged that the COVID-19 virus "was present *and* physically attached itself" to the insured's property, the insured would still fail to state a claim, as the virus's "impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days.")

> We will pay for the loss of "earnings" you sustain and your reasonable; [sic] necessary "extra expense" caused by action of civil authority that prohibits access to the scheduled location(s) *due to direct physical loss of or damage to property, other than at the scheduled location(s)*, caused by or resulting from a Covered Cause of Loss.[52]

Here, Plaintiff alleges it incurred losses because access to *its own facility* was reduced due to "action of civil authority." Plaintiff does not allege that access to its facility was reduced due to loss or damage to non-scheduled property. But even if Plaintiff did make such allegations, it's claim would still fail, as Plaintiff has not alleged "direct physical loss of or damage to [non-scheduled] property," in conformity with the interpretation of the Fifth Circuit.[53]

## IV.
### CONCLUSION

For the reasons set forth herein, the Motion to Dismiss for Failure to State a Claim brought by Defendant, Mt. Hawley Insurance Company, is GRANTED, and all claims brought by Plaintiff are dismissed with prejudice.

THUS DONE in Chambers on this 24th day of March, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[52] ECF No. 11-3 at 33 (emphasis added).
[53] *See Q Clothier* at *6-7.